**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

**PATRICIA WOODS,**

    **Plaintiff,**

v.                                                   **Civil Action No. 4:06cv148**

**THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA,**

    **Defendant.**

## ORDER AND OPINION

Currently before the court are the parties' cross-motions for summary judgment. After examination of the briefs and record, this court determines that oral argument is unnecessary because the facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. The court, for the reasons stated fully herein, **GRANTS** the defendant's motion for summary judgment and **DENIES** the plaintiff's motion for summary judgment.

I. Factual Background

The plaintiff, Patricia Woods, was employed by Wendy's International, Inc., as a manager of one of its restaurants in the summer of 2003. As a result of this employment, she was covered under a disability insurance plan provided by her employer that was issued and administered by the defendant, the Prudential Insurance Company of America. On August 1, 2003, the plaintiff was involved in a motor vehicle accident, and suffered certain injuries to her back, shoulders and left knee. In addition, she has been diagnosed with certain other health

problems, many of which relate to her obesity. After the accident, the plaintiff was approved for twelve months of longterm disability coverage by the defendant. In applying for benefits, the plaintiff indicated that she had been treated by three physicians: Drs. Cloud and Weisman, both general practitioners, and Dr. McAdams, a neurologist. The defendant later received, both from the plaintiff and from external sources, the plaintiff's treatment records with several other doctors. These include Dr. Edwards, a cardiologist; Dr. Dean, a general practitioner; Dr. Phillips, an orthopedic surgeon; Dr. Doss, a physiatrist; Dr. Hong, a gastroenterologist; and Dr. Singh, a neurologist.

Dr. Cloud supported the scope of the plaintiff's injuries from the accident in a statement, reporting that the plaintiff had contusions to her left knee, left and right trapezius, and strains to her back. She underwent various radiological exams that revealed no fractures. The plaintiff was paid short term disability benefits following the accident, and in November of 2003 applied for long term disability benefits from the defendant, citing injuries to her knee and back. Her initial claim was approved, and the plaintiff was paid disability benefits for twelve months. The twelve month initial period ran from January 28, 2004 until January 27, 2005, after which, per the insurance policy, the plaintiff was only eligible to receive continued benefits if the defendant determined that she was "unable to perform the duties of any <u>gainful occupation</u> for which [she was] reasonably fitted by education, training or experience." Long Term Disability Coverage, Exhibit A to Answer (emphasis in original).

During 2004 and 2005, in the time period when the plaintiff was receiving disability benefits and when the defendant terminated the benefits and the plaintiff filed several appeals, the plaintiff was seen by several doctors for a variety of ailments. A brain MRI performed by

Dr. Singh on August 16, 2005 resulted in findings that were "essentially normal." Administrative Record at 109. An MRI of the lumbar region of the plaintiff's spine on March 9, 2005 indicated that the condition of the L4/L5 disc was essentially unchanged since the previous study had been performed, on July 8, 2004. Id. at 110. A radiological series on the plaintiff's lumbar spine on March 9, 2005 demonstrated nothing remarkable outside of mild endplate spurring. Id. at 118. Dr. Hong ordered a small bowel x-ray of the plaintiff in June of 2005, which came back as unremarkable. Id. at 156.

Dr. Cloud prepared a statement dated February 9, 2005, in which he indicated his belief that the plaintiff was in significant pain and was unable to do any type of work. Id. at 169. On February 11, 2005, the plaintiff was treated by Dr. Phillips, who found no motor weakness in her lower extremities. Id. at 113. Dr. Singh examined the plaintiff on April 4, 2005 and noted that she had been diagnosed with diabetes and obesity, and that she complained of numbness in her feet and difficulty balancing while walking. His examination revealed a regular heart rate and rhythm, no joint swelling, and no evidence of depression. Id. at 107-108. On April 21, 2005, Dr. Singh performed an EMG on the plaintiff, and found mild carpal tunnel syndrome in her right wrist. Id. at 106.

Dr. Doss examined the plaintiff on May 5, 2005, as a result of complaints resulting from her diabetes. Although he found a 5/5 strength in her upper and lower extremities, he also diagnosed her as in renal failure, and noted that she reported that she had been on dialysis. Id. at 188. On May 19, 2005, Dr. Doss signed a letter indicating his opinion that she is unable to work. Id. at 194. On June 28, 2005, Dr. Doss discharged the plaintiff from his care, as a result of a violation of a narcotics agreement, as the plaintiff had been receiving Percocet from other

physicians in addition to Dr. Doss.  Id. at 190, 68.  Dr. Edwards examined the plaintiff on July 5, 2005, and reported her complaints of chest pain.  He indicated that his examination revealed a regular heart rate and rhythm.  Id. at 87.

Dr. Singh again evaluated the plaintiff on August 3, 2005, finding her to have stable peripheral neuropathy secondary to diabetes, and that she was obese.  The plaintiff reported having seizures, and the doctor recommended medication to control them.  Dr. Singh also advised the plaintiff against driving, operating heavy machinery, working on ladders or heights, and working on boats, ships, or assembly lines.  Id. at 103.  On August 16, 2005, Dr. Singh performed an EEG and recorded its results as normal.  Id. at 104.

On January 13, 2006, the defendant received two medical records from the plaintiff.  The first is a report from Dr. Cloud dated March 10, 2005, in which he opines that the plaintiff is unable to work.  Id. at 56.  The second is a July 18, 2005 questionnaire prepared by Dr. Phillips, which indicates that the plaintiff is permanently disabled, but also reveals that the only test done on the plaintiff was the lumbar MRI, which revealed the spinal stenosis between L4 and L5.  Id. at 57-58.  On January 6, 2006, Dr. Phillips completed a functional capacity evaluation on the plaintiff, in which he again indicated his conclusion that she was permanently disabled.  Id. at 49-53.  On April 17, 2006, Dr. Weisman drafted a letter in which he indicated that the plaintiff was wheelchair-bound and unable to pursue employment.  Id. at 32.

II.  Procedural History

On January 3, 2005, after evaluating the medical information provided to it by the plaintiff's doctors, the defendant denied long term disability benefits to the plaintiff beyond the initial twelve months.  Id. at 488-90.  In doing so, it found that the medical evidence did not

preclude the plaintiff from performing sedentary work, and therefore that she did not meet the definition of "disabled" under the policy. Id. In making this determination, the defendant cited notes from Dr. Phillips that indicated only minimal objective findings via x-ray and a significant degree of flexion and extension of the plaintiff's knee. The defendant also indicated that notes from the plaintiff's June 28, 2004 visit to Dr. Weisman's office indicate that the plaintiff's motor strength was 5 out of 5 and she had no trouble completing a straight leg raise test. Id. at 489.

The defendant further noted that records received from Dr. Edwards revealed regular heart rate and rhythm, and Dr. Edwards's physical exam revealed that the plaintiff's lungs were clear, with no wheezing. Id. The letter sent to the plaintiff denying her claim for long term disability benefits references a transferrable skills analysis, which indicated several occupations that the defendant believed the plaintiff could perform with her education, training, and experience. The letter also referenced a Labor Market Study for the Newport News, Virginia, area, which found that these jobs existed in that locale. Id. at 413, 488-90. Upon terminating benefits, the defendant offered to provide the plaintiff with job placement assistance, free of charge. Id. at 490.

The plaintiff appealed this determination by letter dated February 17, 2005. She submitted a statement from Dr. Cloud, in which he indicated his belief that the plaintiff was permanently disabled from work. Id. at 202-04. The statement was not accompanied by medical records from Dr. Cloud to support his diagnosis. On March 14, 2005, the defendant denied the plaintiff's first appeal, noting its determination that the record before it did not support a finding that the plaintiff could not perform any of the six occupations identified in her transferrable skills analysis. Id. at 484-86.

The plaintiff filed a second appeal by letter dated May 18, 2005, in which she indicated that she was unable to work because she was stressed, depressed, and very ill. Id. at 198, 479. She submitted a letter dated May 19, 2005 from Dr. Doss, which indicated his belief that the plaintiff was unable to work due to diabetic neuropathy, as well as a February 11, 2005 letter from Dr. Phillips indicating his finding that the plaintiff was unable to work. The plaintiff also resubmitted the statement of Dr. Cloud which had been considered by the defendant on the first appeal. None of these statements, however, were accompanied by medical treatment records from the respective doctors. The defendant obtained an outside review of the plaintiff's claim file, which was performed by Dr. Charles Syrjamaki. Dr. Syrjamaki's report, dated September 22, 2005, acknowledged the plaintiff's pre-existing conditions of morbid obesity and degenerative conditions that restricted her ability to lift, kneel, squat and climb. He concluded, however, that she was not functionally impaired from an employment standpoint, and that her claim of disability due to depression was not supported by the record, which only indicated an occasional prescription for the anti-depressant Zoloft. Further, Dr. Syrjamaki found that the plaintiff's claimed renal failure was also not supported by her medical records. Id. at 458. Thereafter, the defendant denied the plaintiff's second appeal.

The plaintiff then filed a third appeal, on December 20, 2005. Id. at 61, 449. In support of this the plaintiff filed evidence that she had been declared disabled by the Social Security Administration and awarded benefits. Id. at 33, 445. The defendant, after reviewing all available records before it, then upheld its prior decision to terminate benefits on September 12, 2006. Addressing the Social Security Administration decision, the defendant found that it did not present any new medical information that it had not previously considered, and noted that the

determination with regard to long term disability benefits under the policy in this case was made independent of the Social Security Administration's determination. Id. at 444-47.

Thereafter, on November 21, 2006, the plaintiff filed the instant complaint with this court, arguing that she had been improperly denied benefits and seeking $500,000 in damages. The defendant filed an answer and a counterclaim on January 18, 2007, denying the material allegations of the complaint and requesting recoupment of $7,230.80, which represents the amount of money that was paid to the plaintiff in Social Security disability benefits while she was still receiving long term disability payments under the policy with the defendant.

III.  Standard of Review

This case is governed by the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 101 et seq. and is brought pursuant to the civil enforcement provisions of that statute. See 29 U.S.C. § 1132(a)(1)(B). "A denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). "It is well established that a court reviewing the denial of disability benefits under ERISA initially must decide whether a benefit plan's language grants the administrator or fiduciary discretion to determine the claimant's eligibility for benefits, and if so, whether the administrator acted within the scope of that discretion." Gallagher v. Reliance Std. Life Ins. Co., 305 F.3d 264, 268 (4th Cir. 2002) (citing Feder v. Paul Revere Life Ins. Co., 228 F.3d 518, 522 (4th Cir. 2000)).  There are no specific words that must be included to preclude a de novo standard of review, but rather "[i]f the terms of a plan indicate a clear intention to delegate final

7

authority to determine eligibility to the plan administrator, then [a] court will recognize discretionary authority by implication." Feder, 228 F.3d at 522.

"The plan's intention to confer discretion on the plan administrator or fiduciary, however, must be clear. If a plan does not clearly grant discretion, the standard of review is de novo." Gallagher, 305 F.3d at 268-69 (citation omitted). Under the abuse of discretion standard, a decision by an administrator will not be disturbed if it "is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." Bernstein v. CapitalCare, Inc., 70 F.3d 783, 787 (4th Cir. 1995). The Supreme Court has indicated that where "a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion." Firestone Tire, 489 U.S. at 115. In such a scenario, the court must

> review the merits of the interpretation to determine whether it is consistent with an exercise of discretion by a fiduciary acting free of the interests that conflict with those of the beneficiaries. In short, the fiduciary decision will be entitled to some deference, but this deference will be lessened to the degree necessary to neutralize any untoward influence resulting from the conflict.

Ellis v. Metro. Life Ins. Co., 126 F.3d 228, 233 (4th Cir. 1997) (quoting Bedrick v. Travelers Ins. Co., 93 F.3d 149, 152 (4th Cir. 1996)).

Summary judgment under Federal Rule of Civil Procedure 56 is appropriate only when the court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986); Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985). The court must assess the evidence

and draw all permissible inferences in the nonmoving party's favor. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). Nevertheless, the nonmoving party must make a sufficient evidentiary showing on each element of his claims such that a jury could reasonably find in his favor. <u>Celotex</u>, 477 U.S. at 322.

Summary judgment does not require that no factual issues be in dispute. To find against the defendant in this case, the court must find both that the facts in dispute are material and that the disputed issues are genuine. In order to be material, the factual dispute must be dispositive of the claim. <u>See</u> <u>Thompson Everett, Inc. v. National Cable Advertising, L.P.</u>, 57 F.3d 1317, 1323 (4th Cir. 1995). Similarly, the genuineness of the factual dispute must be more than a dispute based on speculation or inference. <u>Celotex Corp.</u>, 477 U.S. at 327; <u>Runnebaum v. NationsBank of Md., N.A.</u>, 123 F.3d 156, 164 (4th Cir. 1997) (en banc), <u>overruled on other grounds by</u> <u>Bragdon v. Abbott</u>, 524 U.S. 624 (1998).

The court will only enter summary judgment in favor of the defendant when "the entire records shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the [nonmoving] party cannot prevail under any circumstances." <u>Campbell v. Hewitt, Coleman & Assocs.</u>, 21 F.3d 52, 55 (4th Cir. 1994) (quoting <u>Phoenix Sav. & Loan, Inc. v. Aetna Cas. & Sur. Co.</u>, 381 F.2d 245, 249 (4th Cir. 1967)).

While it is the moving party's burden to show the absence of a genuine issue of material fact, <u>Pulliam Investment Co., Inc. v. Cameo Properties</u>, 810 F.2d 1282, 1286 (4th Cir. 1987), it is the nonmoving party's burden to establish its existence. <u>See</u> <u>Matsushita Electric Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 585-587 (1986). The evidence that the nonmoving party presents to this end must be more than a "mere scintilla." <u>Barwick v. Celotex Corp.</u>, 736 F.2d

946, 958-959 (4th Cir. 1984). In order for the nonmoving party to survive summary judgment, it must present evidence that is "significantly probative." Celotex Corp., 477 U.S. at 327.

Where the parties have cross-moved for summary judgment, the court normally considers each motion separately. See Rose v. BellSouth Corp., 1997 U.S. Dist. Lexis 7680 (W.D.N.C. 1997). In this case, however, because the plaintiff's motion for summary judgment is little more than a reiteration of her opposition brief to the defendant's motion for summary judgment, a more combined analysis is appropriate. Because the court finds that the plaintiff has failed to even meet the nonmoving party's lesser burden of showing that a triable issue exists, it is unnecessary to impose on the plaintiff the moving party's greater burden of showing a lack of evidence to support the defendant's case. See Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994).

IV. Analysis

As the parties recognize, the first task that the court is confronted with is determining the appropriate standard of review of the plan administrator's decision to deny the plaintiff long term disability benefits. Although the plaintiff argues that the plan does not vest the administrator with discretion over eligibility for benefits, the court is convinced otherwise. Specifically, the policy states:

> You are disabled <u>when Prudential determines that</u>:
>
> • you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury; and
>
> • you have a 20% or more loss in your <u>indexed monthly earnings</u> due to that <u>sickness</u> or <u>injury</u>.
>
> After 12 months of payments, you are disabled <u>when Prudential determines that</u> due to the same sickness or injury, you are unable to perform the duties of any <u>gainful occupation</u> for which you are reasonably fitted by education, training or experience.

Long Term Disability Coverage, Exhibit A to Answer (first and fifth emphases added).

The phrase "when Prudential determines that" must be considered as a grant of discretion to Prudential, the plan administrator, to determine eligibility for long term disability benefits. This language "indicate[s] a clear intention to delegate final authority to determine eligibility to the plan administrator," Feder v. Paul Revere Life Ins. Co., 228 F.3d 518, 522 (4th Cir. 2000). In Bernstein v. CapitalCare, Inc., 70 F.3d 783, 788 (4th Cir. 1995), the Fourth Circuit found that the phrase "only if CapitalCare determines" vested discretion in the plan administrator. The focus in that phrase, as in the policy language at issue in this case, is on what the plan administrator has authority to do. In both Bernstein and the instant case, the administrator was permitted to determine whether a claimant was entitled to coverage. This clearly constitutes a grant of discretion.

Indeed, the Alexandria division of this court was recently called upon to interpret the precise language at issue in this case, and held that it "confers upon Prudential the discretionary authority to render eligibility determinations." Chisholm v. KPMG Long Term Disability Plan, No. 03-1531, slip op. at 6 (E.D. Va. Oct. 6, 2004). See also Heim v. Prudential Ins. Co. of America, No. 1:05cv282, 2006 WL 382147, at *8 (E.D. Va. Feb. 16, 2006) (finding that the phrase "when Prudential determines that" granted discretion to the administrator and triggered the abuse of discretion standard).[1] It is therefore clear that the defendant had discretion to

---

[1]The court notes that the Alexandria division, in Neumann v. Prudential Ins. Co. of America, 367 F.Supp.2d 969, 976 (E.D. Va. 2005), reached the opposite conclusion relying upon the same language. In so holding, that court distinguished Bernstein as not directly addressing this issue because the parties in that case had agreed that the plan administrator had discretion. Id. at 976 n.11. See also Bernstein, 70 F.3d at 788. However, the Bernstein court necessarily had to reach the conclusion that the plan actually granted discretion to CapitalCare in order to reach the question of whether to apply the modified abuse of discretion standard. Id. Further,

determine eligibility for benefits under the plan in this case. Thus, the appropriate standard to use is the abuse of discretion standard.

However, as both parties indicate, the defendant was both the plan administrator and the entity responsible for paying benefits, and therefore was under a conflict of interest. Thus, as the Fourth Circuit has instructed, the court must employ a modified or lessened abuse of discretion standard, and review whether the exercise of discretion by the administrator is consistent with the discretion that an administrator free from the conflict of interest would have exercised in determining eligibility for benefits. See, e.g., Ellis v. Metro. Life Ins. Co., 126 F.3d 228, 233 (4th Cir. 1997).

Applying the modified abuse of discretion standard, the court concludes that the defendant's decision should be upheld, as it is "the result of a deliberate, principled reasoning process and . . . is supported by substantial evidence." Bernstein, 70 F.3d at 788. The evidence

---

the Neumann court relied upon the Seventh Circuit's opinion in Herzberger v. Std. Ins. Co., 205 F.3d 327 (7th Cir. 2000), which rejected the argument that the language "when Prudential determines that" granted discretion to the plan administrator. Id. at 332. The Herzberger court, however, reasoned that the language in question was somewhat tautological, in that it only required the administrator to determine that a claimant was eligible for benefits before it could pay those benefits. Id. Yet the language of the plan goes well beyond a mere requirement that the administrator only pay benefits to those eligible. Instead, it requires that the administrator determine that the claimant is in fact "unable to perform the duties of any gainful occupation" for which the claimant's education and experience make her eligible. While the Herzberger court distinguished between a list of objective criteria and one of subjective elements, it is clear even from the conflicting medical diagnoses in this case that different doctors may reach opposite conclusions about an individual's ability to perform employment when presented with the same evidence. The determination that the defendant in this case was called upon to make is not simply one that requires a sterile mathematical calculation, it is one that necessarily requires a subjective determination as to the weight and credibility to be lent to conflicting evidence. It is clear, then, that the plan language grants the administrator discretion to determine whether the claimant is disabled within the meaning of the plan. Therefore, the abuse of discretion standard is appropriate.

demonstrates that the defendant reviewed both the evidence submitted by the plaintiff and that which it collected on its own in making its initial determination that the plaintiff was not entitled to long term disability benefits beyond the initial twelve month period. The defendant noted that much of the evidence before it consisted of the plaintiff's subjective complaints of pain and reports from physicians that were unsupported by objective medical data. The defendant relied upon an independent review of the medical data performed by Dr. Syrjamaki, who noted that inconsistencies existed between the notes of the different physicians who had treated the plaintiff, and opined that the plaintiff was not functionally impaired from employment. Administrative Record at 68-69. Where a disability policy does not specifically define regular occupation, the Fourth Circuit has found that it is appropriate for the administrator to look to the Department of Labor's Dictionary of Occupation Titles to define the claimant's material duties. Gallagher v. Reliance Std. Life Ins. Co., 305 F.3d 264, 270-71 (4th Cir. 2002). Here, the description for fast food manager, the position that the plaintiff held while employed by Wendy's, lists the occupation as "light," and therefore the defendant determined that the plaintiff was capable of performing light to sedentary work. Thus, because the defendant found that the plaintiff was able to engage in gainful employment for which she was reasonably fitted, it determined that she was not disabled, and therefore not entitled to continued payment of long term disability benefits.

It is clear, then, that the defendant engaged in a reasoned and thorough review of the plaintiff's claim for benefits, and that the defendant's decision not to extend long term disability benefits was supported by substantial evidence. This is so even in the face of a seemingly contrary decision by the Social Security Administration. As the Fourth Circuit has noted,

"ERISA benefits are a matter of contract. Accordingly, what qualifies as a disability for social security purposes does not necessarily qualify as a disability for purposes of an ERISA benefit plan - the benefits provided depend entirely on the language in the plan." Smith v. Continental Casualty Co., 369 F.3d 412, 420 (4th Cir. 2004). See also Elliott v. Sara Lee Corp., 190 F.3d 601, 607 (4th Cir. 1999) (holding that the Social Security Administration's determination that a claimant was totally disabled was not entitled to any greater weight than the other medical evidence available to the plan administrator). The record here is clear that the defendant considered the fact that the plaintiff had been granted social security disability benefits, but ultimately found other evidence that the plaintiff was not disabled to be availing. This decision is consistent with the discretion that would have been exercised by a plan administrator who was not operating under a conflict of interest. Therefore, summary judgment in favor of the defendant is appropriate in this case.

With regard to the defendant's counterclaim, the plaintiff's reply brief indicates that she "does not dispute the Defendants [sic] entitlement to reimbursement of those funds." Reply Brief at 4. However, the plaintiff also indicates that she agrees to a credit for the amount at issue if she is successful in this claim. Although she does not explicitly indicate her agreement to the defendant recovering the sought-after amount even if she loses her claim against the plaintiff, it is clear that the plaintiff is not disputing the fact that the defendant is entitled to $7,230.80, the amount by which the plaintiff was doubly compensated by both the defendant and the Social Security Administration. By failing to dispute this claim, the plaintiff has demonstrated that it is appropriate, and therefore summary judgment in favor of the defendant is appropriate with respect to its counterclaim.

V.  Conclusion

Applying the modified abuse of discretion standard, it is clear that the defendant did not abuse its discretion in denying the plaintiff long term disability benefits.  Further, the defendant has demonstrated–and the plaintiff has not denied–that it is entitled to recoup $7,230.80 it paid to the plaintiff.  Therefore, the defendant's motion for summary judgment is **GRANTED** and the plaintiff's motion for summary judgment is **DENIED.**

The Clerk is **REQUESTED** to send a copy of this Order to counsel of record for all parties.

It is so **ORDERED**.

/s/
Jerome B. Friedman
UNITED STATES DISTRICT JUDGE

June  6, 2007
Norfolk, Virginia

15